Richard Lee RISNER, II, Petitioner–Appellant,

v.

DIRECTOR OF REVENUE, Respondent–Respondent.

No. SD 31744.

Missouri Court of Appeals, Southern District, Division Two.

Feb. 1, 2013.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 19, 2013.

William J. Ekiss, Clayton, MO, for appellant.

Mary H. Moore, Jefferson City, MO, for respondent.

MARY W. SHEFFIELD, J.

Richard Lee Risner, II, ("Appellant") appeals from the circuit court's decision upholding the administrative revocation of his driver's license for refusal to submit to a breath test. Appellant argues that the circuit court's decision that the arresting officer had reasonable grounds to believe that Appellant was operating the vehicle is

against the weight of the evidence. We disagree and affirm.

### Standard of Review

■ "This Court will affirm the trial court's judgment unless there is no substantial evidence to support it, unless the decision is contrary to the weight of the evidence, or unless the trial court erroneously declares or applies the law." *Hinnah v. Director of Revenue*, 77 S.W.3d 616, 620 (Mo. banc 2002). "When evidence is contested by disputing a fact in any manner, this Court defers to the trial court's determination of credibility." *White v. Director of Revenue*, 321 S.W.3d 298, 308 (Mo. banc 2010). The reason for this deference is that the trial court "is in a better position not only to judge the credibility of witnesses and the persons directly, but also their sincerity and character and other trial intangibles which may not be completely revealed by the record." *Id.* at 308–09 (quoting *Essex Contracting, Inc. v. Jefferson Cnty.*, 277 S.W.3d 647, 652 (Mo. banc 2009)). "The appellate court's role is not to re-evaluate testimony through its own perspective." *Id.* at 309. When the challenge is one that the judgment was against the weight of the evidence, "the appellate court confines itself to determining ... whether the judgment is against the weight of the evidence—'weight' denoting probative value and not the quantity of evidence[.]" *Id.* (Internal citations omitted.)

### Factual and Procedural Background

Viewed through the lens of our standard of review, the following facts were adduced at trial.

Deputy Sheriff Donna Ford ("Deputy Ford") was on duty during the early morning hours of May 15, 2011, when she noticed a SUV pull out of the parking lot of a bar rather quickly. The vehicle swerved in and out of its lane, changed lanes without signaling, and demonstrated other erratic behavior. Deputy Ford initiated a traffic stop.

The SUV pulled into a parking lot, and Deputy Ford immediately put her spotlight on the vehicle. Nobody switched seats after the vehicle stopped. Deputy Ford approached the vehicle and found Appellant and his girlfriend struggling in the driver's seat of the SUV. Both of Appellant's hands were on the steering wheel, and his foot was on the accelerator. Deputy Ford asked what was going on, and Appellant stated that his girlfriend "was driving and he didn't want her to get in trouble, so he was switching seats with her." Appellant smelled of alcohol, admitted that he had had four drinks, had glassy, bloodshot eyes, had slurred speech, and admitted that he was too drunk to be driving. He showed signs of intoxication on two field sobriety tests before he refused to complete further field sobriety tests. At various times during the encounter, Appellant and his girlfriend each admitted he and she had been driving and then denied that he or she had been driving. Deputy Ford arrested both Appellant and his girlfriend for driving while intoxicated and transported them to the jail. At the jail, Deputy Ford informed Appellant of the Missouri Implied Consent Law, and Appellant refused to submit to a breath test.

Appellant's driver's license was revoked pursuant to § 577.041,[1] and he filed a petition for review in the circuit court. At the evidentiary hearing on that petition, the Director presented the testimony of Deputy Ford as summarized above. Deputy Ford also gave the following description of

---

1. Unless otherwise indicated, all statutory references are to RSMo Cum.Supp. (2011).

the relative positions of Appellant and his girlfriend at the time of the stop:

> They were side by side in the driver's seat. [Appellant's girlfriend] was against the driver's door, and one of her legs was on the seat. The other leg was somewhat over the left leg of [Appellant]. [Appellant] was sitting in the seat with his right foot on the gas pedal, and they were side by side there.

Deputy Ford stated that she believed both Appellant and his girlfriend were operating the vehicle.

Appellant presented his girlfriend's testimony. She testified that she had been driving as they had left the bar. She further stated that Appellant attempted to switch seats with her after she was stopped but that he never succeeded in getting control of the vehicle. The circuit court affirmed the revocation of Appellant's driver's license.

### *Discussion*

Appellant argues the circuit court's decision that there were reasonable grounds to believe he was driving was against the weight of the evidence because his girlfriend (1) admitted driving the vehicle, (2) owned the vehicle, and (3) was closer to the driver's side door at the time of the stop. Thus, the issue to be decided in this case is whether an arresting officer has reasonable grounds to believe that a suspect is operating a vehicle when the suspect is sitting in the driver's seat, has his hands on the steering wheel, has his foot on the accelerator, and admits to driving the vehicle even though another person is sitting in the driver's seat with him. We answer this question in the affirmative.

■ On review of a driver's license revocation based on a refusal to submit to a breath test, there are only three issues to be determined: "(1) whether or not the person was arrested or stopped; (2)

whether the officer had reasonable grounds to believe that the person was driving a motor vehicle while in an intoxicated or drugged condition; and (3) whether or not the person refused to submit to the test." *Hager v. Director of Revenue,* 284 S.W.3d 192, 194 (Mo.App. S.D.2009). *See also* § 577.041. Appellant challenges only the second portion of the determination, *i.e.,* whether the officer had reasonable grounds to believe that Appellant was operating the vehicle.

■ The principles governing the determination of whether an officer has reasonable grounds to believe a suspect was driving while intoxicated are well settled:

> Reasonable grounds is virtually synonymous with probable cause. Probable cause exists when the facts and circumstances warrant a person of reasonable caution to believe that an offense has been or is being committed, based on the circumstances as they appear to a prudent, cautious and trained police officer. Whether there is probable cause to arrest depends on the information in the officer's possession prior to the arrest. There is no precise test for determining whether probable cause exists; rather, it is based on the particular facts and circumstances of the individual case.

*Hager,* 284 S.W.3d at 196 (internal citations and quotation marks omitted). Furthermore, § 577.041 does "not allow the licensee to contest the revocation simply on the grounds that the licensee was not driving." *Hager,* 284 S.W.3d at 196 (quoting *Hinnah,* 77 S.W.3d at 621). The issue is merely whether there were reasonable grounds to believe that he or she was driving. *Hager,* 284 S.W.3d at 196. "In addition, an arresting officer may establish probable cause that a person was driving from that person's admissions alone." *Id.* at 197.

■ In the present case, Deputy Ford had her spotlight on the vehicle from the

moment it stopped, and she did not see anyone switch seats. When she approached the vehicle, Appellant was sitting in the driver's seat, had both hands on the steering wheel, and had his foot on the accelerator. Later, he admitted that he had been driving the vehicle. This was substantial evidence from which the circuit court could decide that Deputy Ford had reasonable grounds to believe that Appellant was operating the vehicle.

None of the evidence to which Appellant points had more probative value than this testimony. Appellant argues that his girlfriend's claim to be driving is more credible than his own because she was closer to the driver's side door and because she was the owner of the vehicle. This argument first fails because the relative credibility of the witnesses is for the circuit court to decide. *See White*, 321 S.W.3d at 308. Given the erratic behavior of the vehicle and the fact that both Appellant and his girlfriend were in the driver's seat with their hands on the wheel, a reasonably prudent police officer would be justified in believing that both had been operating the vehicle. In fact, that is what Deputy Ford believed. Nothing in the statute or common experience mandates that an officer, when faced with the unique circumstances of this case, determine which of the two suspects was driving and make only one arrest.

Appellant's assertion that his girlfriend is presumed to have been driving because she owned the SUV has no basis in the applicable law. In support of that argument, Appellant cites *Marean v. Petersen*, 259 Iowa 557, 144 N.W.2d 906 (1966); *Grinstead v. Anscer*, 353 Mich. 542, 92

N.W.2d 42 (1958); and *Kavale v. Morton Salt Co.*, 329 Ill. 445, 160 N.E. 752 (1928).[2] Those cases are both factually and legally distinguishable. None of those cases involved a driver's license revocation under the Missouri statute, and so the legal issue in those cases was distinct from the legal issue in the present case. *Marean*, 144 N.W.2d at 908–09, addresses the issue of whether the jury finding that the defendant in a tort case was driving was supported by the evidence. *Grinstead*, 92 N.W.2d at 43, addresses the issue of whether the trial court finding that the defendant in an action under a Michigan dram shop law provided alcohol to the deceased driver was supported by the evidence. *Kavale*, 160 N.E. at 752–54, addresses the issue of whether the driver had strayed from the service of his employer so that the employer could not be held liable for the damages caused in a vehicle accident. Furthermore, the cases are factually distinguishable. *Marean* is factually distinguishable because all of the occupants of the vehicle were killed and no one saw who had been driving. *Marean*, 144 N.W.2d at 909. *Grinstead* is different from the present case because all of the occupants of the vehicle were ejected from the vehicle during the accident. *Grinstead*, 92 N.W.2d at 43. Here, in contrast to *Marean* and *Grinstead*, Deputy Ford actually saw Appellant in the driver's seat of the SUV. *Kavale* is even more inapposite because in that case there was not even a factual question regarding who was driving the vehicle. *Kavale*, 160 N.E. at 752.

In sum, the circuit court's decision that Deputy Ford had reasonable grounds to believe Appellant was driving the vehicle

---

**2.** At oral argument, Appellant's counsel provided this Court with an additional citation to *Shumaker v. Director of Revenue*, 171 S.W.3d 135 (Mo.App. W.D.2005). As with the cases cited in Appellant's brief, *Shumaker* is factually distinguishable. In *Shumaker*, there was no evidence other than the driver's statements regarding who had been driving at the time of the accident. *Id.* at 138. Here, in contrast, Deputy Ford observed Appellant sitting in the driver's seat of the car. *Shumaker* does not aid Appellant's position.

was not against the weight of the evidence. Appellant was sitting in the driver's seat, had both hands on the steering wheel, had his foot on the accelerator, and admitted he had been driving the vehicle. Appellant's arguments to the contrary simply ask us to second-guess the trial court's credibility determinations, which we cannot do. *See White*, 321 S.W.3d at 308–09. Appellant's sole point is denied.

### Decision

The judgment of the circuit court is affirmed.

JEFFREY W. BATES and DON E. BURRELL, JJ., concur.