**STATE of Missouri, Plaintiff–Respondent,**

v.

**David L. BAILEY, Defendant–Appellant.**

**No. 25692.**

Missouri Court of Appeals,
Southern District,
Division One.

July 20, 2004.

William J. Swift, Columbia, MO, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Dora A. Fichter, Assistant Attorney General, Jefferson City, MO, for Respondent.

JAMES K. PREWITT, Judge.

Following jury trial, David L. Bailey ("Defendant") was convicted of driving while intoxicated, in violation of § 577.010, RSMo 2000, and driving while [license] revoked, in violation of § 302.321, RSMo 2000. He was sentenced to four years' imprisonment on the first count and six months on the second, with the sentences to be served concurrently. Defendant raises one point on appeal, and contends that the trial court erred in overruling his objection to certain statements made by the prosecutor during closing argument and in refusing to instruct the jury in the manner requested by Defendant.

### Facts

Defendant does not challenge the sufficiency of the evidence. Viewed in the light most favorable to the verdict, the following evidence was adduced at trial. Shortly after noon on March 23, 2001, the Shannon County Sheriff's Department received a phone call "concerning a reported drunk driver on an ATV [all terrain vehicle] . . . . [near] Tyler's Garage in West Eminence[.]" Jack Triplett ("Deputy"), then Chief Deputy of the department, investigated the call.

Deputy encountered an ATV being driven on West Eminence Road, a public road in Shannon County. Deputy did not chase the ATV, but "turned the lights on" his police vehicle, and Defendant stopped the ATV when he reached Deputy's vehicle. At that point, Deputy recognized Defendant as the driver. Deputy was aware that Defendant's driver's license had been revoked. When asked by Deputy whether he had a driver's license, Defendant verified that he did not.

Deputy detected a "strong odor of alcohol on [Defendant.]" In response to Deputy's question as to whether he had been drinking, Defendant indicated that he had been drinking for three days. Regarding what alcohol Defendant had consumed on March 23, Defendant admitted to drinking "a couple of beers and a couple of shots."

Deputy asked Defendant "if he would take some field sobriety tests," and Defendant told Deputy that he "could not perform any of the balance tests" due to a head injury. Deputy then placed Defendant under arrest, and informed Defendant that Deputy "was going to take him to the sheriff's office and do a breath analysis test on him for alcohol." When Defendant said "that he was not going to

take the test[,]" Deputy told Defendant that they would discuss that when they arrived at the sheriff's department.

Once at the department, Deputy gave Defendant his Miranda rights and proceeded to ask Defendant questions specified on the Alcohol Influence Report. In the observation section of that report, Deputy noted Defendant had a strong odor of alcohol; bloodshot eyes; dilated pupils; slurred speech; and walking, turning, and balance that was fair. Deputy again asked Defendant if he had been drinking, to which Defendant responded "yes," indicating that he had consumed three or four beers at his mother's house since 9:00 a.m. Defendant also noted that he was taking medication, including Prozac, Celebrex, and Amitriptyline, and had taken the last dose of each at approximately 9:30 a.m.

Deputy read Defendant the implied consent portion of the report and explained to Defendant that if he refused to take a requested test, Defendant's driver's license would be revoked for one year and that evidence of a refusal could be used against Defendant in court. Deputy then asked Defendant to submit to a breathalyzer test, and Defendant refused to take the test, telling Deputy that "he wouldn't pass it."

Deputy could not recall if Defendant asked to take a blood test, but acknowledged that Defendant may have because "it sounds familiar." Deputy noted, however, that it was department policy to not offer any other test once a person refused to submit to a breathalyzer test.

At trial, which was held in Howell County pursuant to the grant of Defendant's request for a change of venue, in addition to Deputy's testimony on behalf of the State, Dr. Greg Shoofs was the one witness called on Defendant's behalf. Dr. Shoofs, who practiced in the fields of general medicine as well as ophthalmology, reviewed Defendant's medical records and also personally examined Defendant. According to Dr. Shoofs, Defendant suffered damage to his middle ear due to a skull fracture, which resulted in a loss of balance, difficulty walking, and loss of hearing in his left ear. Dr. Shoofs also noted that Defendant "has a very particular type of abnormality of the pupil called anisocoria, where one pupil is a significantly different size, and more dilated than the other."

The jury found Defendant guilty of driving while intoxicated, in violation of § 577.010, RSMo 2000, and driving while [license] revoked, in violation of § 302.321, RSMo 2000. The trial court sentenced Defendant to concurrent terms of four years' imprisonment for driving while intoxicated, and six months for driving while revoked, respectively. The trial court overruled Defendant's motion for new trial and this appeal followed.

## Discussion

■ Defendant raises one point on appeal in which he contends that the trial court erred in overruling his objection to statements made by the State during the rebuttal portion of its closing argument and in refusing to instruct the jury in the manner requested by Defendant. According to Defendant, the prosecutor's comments indicated to the jury that it was Defendant's burden to obtain a blood test to measure his blood alcohol level, which shifted the burden of proof, in violation of Defendant's federal and state constitutional rights to due process and a fair trial. Defendant argues that he is entitled to a new trial because the trial court should have sustained the objection and instructed the jury that it was not Defendant's burden to have obtained an independent blood test to prove that he was not intoxicated.

Although the allegedly improper comments occurred during the rebuttal portion of the State's closing argument, we find it helpful to consider statements made by both the prosecutor and defense counsel during earlier portions of closing argument. The following statements were made during the State's initial closing argument.

If you find that the state has proven its burden of proof, that he was intoxicated while driving [the ATV], and he did not have a license to drive it, then we're asking that you find him guilty.

Now, a lot of people start saying, Well, the state has to prove beyond a reasonable doubt. How can you ever reach it? One witness. How can you ever get beyond a reasonable doubt?

Well, the judge just told you what beyond reasonable doubt means. It's Instruction Number 4, and you'll have a copy of this in your jury room. It's—proof beyond a reasonable doubt is the proof that leaves you firmly convinced of defendant's guilt.

If you think, after listening to the evidence here today, that he is guilty of driving while intoxicated, and driving without a license, then the state has met its burden of proof. We've proved beyond a reasonable doubt because, as the judge as [sic] said, it leaves you firmly convinced of defendant's guilt.

. . . .

[Defendant] was given the opportunity to blow into that machine and prove that he wasn't intoxicated. What did he do? Before he even made it to the sheriff's department, right out on West Eminence Road, when he said, You're under arrest, we're taking you into [sic] blow on the breathalyzer. First thing he said, I'm not blowing. I'm not doing it. He went through the whole series of questions and got to the question, you know, You're entitled to have a breathalyzer. I'm not doing it.

The deputy read—summarized some of the questions. The questions are very specific. Evidence of a refusal to take the test may be used against you in a court of law. I'm not doing it. Having been informed of the reasons for requesting the test. Will you take the test? No. You know he was given an opportunity to take it. If he wasn't intoxicated, it would have cleared him. We have the Exhibit 5, just a refusal.

. . . .

Since I have the burden of proof, I get to go first and last, or I have to go first and last. The state has proven beyond a reasonable doubt that on that day in March, here in Shannon County, [Defendant] was driving that ATV on a West Eminence Road while he was intoxicated.

We next consider statements made by defense counsel during his closing argument.

Now, [Defendant] did refuse a breath test. But, we've got to remember, his driving was not impaired. He was asked to do field sobriety tests that he could not do because of his balance problem, and suddenly he's under arrest. But he—the officer remembered, the officer testified, he may have asked for a blood test. Well, sure, a breathalyzer performed correctly may give a correct reading, but what does a blood test do?

A blood test is—a neutral third party gives a blood test. And if the blood test would have been given to [Defendant] by a neutral third party, that evidence would be here today. But it's not. What about a blood test is it that the state did not want you to see? Was this a rush to judgment?

. . . .

And if he would have been given that blood test that he wanted, he would have been cleared. But they wouldn't give it to him. Why? Why wasn't he given that blood test? It would have cleared him.

. . . .

Now, for that reason, we don't believe that the evidence that's came—ah—that the state has met their burden of proof. They have to prove beyond a reasonable doubt. Every single element that they're charging. Every single element that they're charging must be proven beyond a reasonable doubt.

And if they haven't done that, you can only do one thing. And that is to vote not guilty. 'Cause it's the only thing you can do.

Now, we reach the rebuttal portion of the State's closing argument, during which the following comments and exchanges were made.

Talk about the fact that he was not given a blood test. They are not required to give them a blood test. They were required to give them one or the other. They offered him the breathalyzer. No evidence that the breathalyzer isn't equal to the blood test. Blood test, you know, has to go to a hospital, has to find a nurse willing to do it. They offered him the breathalyzer. He turned it down. But the evidence was he got to leave a short time after.

You can look at the evidence and the reasonable inferences therefrom. If the blood test would have proved that he wasn't intoxicated, he could have gotten—

[Defense]: Object, Your Honor.

[State]: Well, they raised it, Judge.

[Trial Court]: Overruled. The jury is instructed that their recollections are what they should rely on. Go ahead.

[State]: Thank you. I submit to you that it's as much speculation as to what the blood test would have done or would not have done. It's not the state's problem that he refused the test he was offered.

It isn't when they arrest somebody for DWI that they can just sit there and say, No, let me think what test I'd pass on this one. He was intoxicated. He knew he was intoxicated. That's why he declined to take the breathalyzer.

After the prosecutor had finished his closing argument, defense counsel asked to approach the bench and the following exchange occurred.

[Defense]: Judge, specifically, I have an objection. The state, in argument, shifted the burden to the defendant to have to put on some evidence, and I don't think that—ah—defendant had any burden to go out and get a test on his own.

[State]: The defendant's argument was that if he had received that test he would have been—the test would have found him not to be intoxicated.

[Trial Court]: The defendant—ah—your objection is noted. I'll overrule it. What relief do you ask for?

[Defense]: Judge, I would ask for an instruction that the defendant had no duty to perform an independent test.

[Trial Court]: Are you satisfied if I instruct the jury that a person arguing a proposition has a burden of proving it?

[Defense]: I don't think that corrects the—

[Trial Court]: What are you asking me specifically to do?

[Defense]: That, Judge, to—to reiterate the instruction, the defendant is presumed to be innocent, and the defendant has no burden of proving that he was not intoxicated.

Counsel were requested to return to their tables and the proceedings resumed in open court, and the trial court instructed the jury with the following.

The court would remind the jury that arguments of counsel are not evidence, and there are two things that you are to do when you go into your jury room. You are to determine the facts as you remember them, and as you believe them to be, and when you have made that determination of those facts, you are to carefully fit those facts into the law, and the law, if there's any question in your mind what is supposed to be done, or what the law requires, carefully read these instructions. The answers are in there.

The trial court then asked if defense counsel requested any other relief and, if he did, to approach the bench.

[Defense]: Judge, I still [inaudible] be specific the defendant had no burden to go out and get an independent test, which is what he just said.

[Trial Court]: I'm not sure I agree with that interpretation of it. But the admonition that I have given the jury, I think any further focus on my questions are unsolicited. My commenting on the instructions, I don't think the jury is confused about what the facts were, and I've told them to read the instructions, so I'll stand on that.

A trial court's ruling on closing argument is reviewed for abuse of discretion. *State v. Davis*, 126 S.W.3d 398, 400 (Mo.App.2004). Its ruling will only be considered reversible error if both an abuse of discretion and prejudice to the defendant occurred. *Id.* We will reverse a conviction only if the allegedly improper comments had a decisive effect on the jury. *State v. Wright*, 941 S.W.2d 877, 883 (Mo.App. 1997). If evidence of guilt is strong, error may be disregarded as harmless. *Id.*

■ The best way to handle improper comments made by the prosecutor, from reprimanding counsel to discharging the jury, is within the discretion of the trial court. *State v. Pope*, 50 S.W.3d 916, 922 (Mo.App.2001). A curative instruction may be given to address error related to improper argument. *State v. Johnson*, 22 S.W.3d 183, 191 (Mo.banc 2000). The trial court is in a superior position to hear the comments and observe their impact on the jury. *Pope*, 50 S.W.3d at 922.

Here, the trial court instructed the jurors "that their recollections are what they should rely on" and "to determine the facts as [they] remember[ed] them[.]" Such a cautionary instruction may be adequate to serve as the appropriate curative measure. *State v. Delaney*, 973 S.W.2d 152, 155–156 (Mo.App.1998). Further, the jury is presumed to have followed the trial court's instructions. *State v. Gilbert*, 103 S.W.3d 743, 751 (Mo.banc 2003).

■ A prosecutor is also allowed to make retaliatory arguments during closing. *State v. Parker*, 886 S.W.2d 908, 922 (Mo.banc 1994). The basis for this principle is that a defendant may not provoke a reply to his own argument and then assert error. *Id.* Retaliatory arguments at closing may go beyond the normal bounds of closing arguments. *State v. Matchett*, 69 S.W.3d 493, 500 (Mo.App.2001). The trial court has considerable discretion in allowing retaliatory arguments by the prosecutor. *State v. Crump*, 875 S.W.2d 241, 242 (Mo.App.1994).

■ Given the overall context of the comments, the overwhelming evidence of Defendant's guilt (including Defendant's own admission regarding his consumption of alcohol), and our standard of review, we cannot find that Defendant was prejudiced. We also note that in a refusal to submit

case brought under § 577.041, RSMo 2000, which we acknowledge this case was not, once a driver has refused to submit to any of the chemical tests allowed (of which the breathalyzer is one), no further chemical tests may be given. *Moody v. Dir. of Revenue,* 14 S.W.3d 729, 732 (Mo.App. 2000). Defendant's point is denied.

## Conclusion

The judgment is affirmed.

GARRISON, P.J., and RAHMEYER, J., concur.